# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JANA FORSYTHE and FORSYTHE ENTERPRISES, INC., dba FEI CONSTRUCTION, | Case No.: 2:16-cv-01867-GMN-VCF |
| Plaintiffs, | **ORDER** |
| vs. | |
| RENO-SPARKS INDIAN COLONY, STEVE STOUT, VICKY OLDENBURG, STEVE MORAN, ARLEN MELENDEZ, WOOD-RODGERS, INC., and MARK CENDAGORTA, | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss, (ECF No. 17), filed by Defendants Arlan Melendez, Steve Moran, Vicky Oldenburg, Steve Stout ("RSIC Officers"), and Reno-Sparks Indian Colony ("RSIC") (collectively "RSIC Defendants"). Plaintiffs Jana Forsythe ("Forsythe") and Forsythe Enterprises, Inc. ("FEI") (collectively "Plaintiffs") filed a Response, (ECF No. 24), and RSIC Defendants filed a Reply, (ECF No. 27).

Also pending before the Court is the Motion to Dismiss, (ECF No. 19), filed by Defendants Mark Cendagorta ("Cendagorta") and Wood Rodgers, Inc. ("Wood Rodgers") (collectively "Wood Rodgers Defendants"). Plaintiffs filed a Response, (ECF No. 25), and Wood Rodgers Defendants filed a Reply, (ECF No. 28). For the reasons discussed below, both RSIC Defendants' and Wood Rodgers Defendants' Motions to Dismiss are **GRANTED**.

I. <u>**BACKGROUND**</u>

This case arises out of Plaintiffs' § 1983 lawsuit against an Indian colony and a private civil engineering firm for Plaintiffs' bid not being chosen for a construction project. Forsythe

is "a woman and majority owner of a small Southern Nevada construction business surviving in a male-dominated industry." (Am. Compl. ¶ 2, ECF No. 8). RSIC is a "federally recognized Indian tribe" and Wood Rodgers is a private civil engineering firm. (*Id.* ¶¶ 14, 20).

The case at hand pertains to two construction contracts federally funded by the Economic Development Administration ("EDA") and the U.S. Department of Housing and Urban Development ("HUD") respectively. (*Id.* ¶ 24). RSIC Defendants and Wood Rodgers Defendants (collectively "Defendants") opened bids for companies to work for the EDA construction contract during an eight-day period in late July 2014. (*Id.* ¶ 25). Defendants led the EDA procurement, as Wood Rodgers Defendants assisted with the bidding, and only RSIC Defendants participated in the second HUD procurement. (*Id.* ¶¶ 25, 210).

During the EDA procurement, Plaintiffs signed and tendered what they assert to have been the lowest bid on July 22, 2014. (*Id.* ¶¶ 80, 236). Plaintiffs submitted this bid in competition with "three male-owned construction companies; two based in Sparks, the other based in Fallon but with an office in Sparks." (*Id.* ¶ 70). After a series of exchanges, RSIC Defendants ultimately disqualified Plaintiffs' bid and awarded the EDA contract to a "Male Bidder, whose base bid was about $48,301 higher than Plaintiffs' base bid." (*Id.* ¶¶ 108, 124).

A similar situation occurred with the HUD procurement. On July 25, 2014, Plaintiffs tendered their bid for the HUD contract and on July 30, 2014, the bid opened. (*Id.* ¶¶ 146–147). After a series of exchanges, on September 22, 2014, RSIC Defendants stated that they awarded the HUD contract to another contractor and returned Plaintiffs' bid and bid bond. (*Id.* ¶ 174).

On August 7, 2016, Plaintiffs filed their Complaint, (ECF No. 2), and on September 11, 2016, Plaintiffs filed their Amended Complaint, (ECF No. 8). In the Amended Complaint, Plaintiffs allege twelve causes of action pursuant to § 1983 and four state causes of action. (Am. Compl. at 1). The causes of action are: (1) sex discrimination pursuant to 42 U.S.C. § 6709; (2) sex discrimination pursuant to 42 U.S.C. § 1323; (3) retaliation; (4) federal bidding;

(5) equal protection; (6) interstate travel; (7) substantive due process; (8) free speech and equal protection; (9) interstate commerce; (10) due process; (11) deliberate indifference; (12) conspiracy; (13) fraud through intentional misrepresentation; (14) negligent misrepresentation; (15) intentional infliction of emotional distress; (16) and negligent infliction of emotional distress. (*Id.*). Plaintiffs premise this case on the theory that "[e]verything that happened to Jana Forsythe was because she is female. Defendants induced Jana Forsythe to bid because she is female. Jana Forsythe lost the two contracts because she is female." (*Id.* ¶ 179).

On November 14, 2016, RSIC Defendants filed their Motion to Dismiss, (ECF No. 17), seeking dismissal of all of Plaintiffs' claims due to sovereign immunity. (*See* RSIC Defendants' Mot. to Dismiss ("RSIC MTD") 2:13–14). On the same day, Wood Rodgers Defendants filed their Motion to Dismiss, (ECF No. 19), seeking dismissal of all of Plaintiffs' claims due to Wood Rodgers Defendants failing to be state actors as required by § 1983. (*See* Wood Rodgers Defendants' Mot. to Dismiss ("Wood Rodgers MTD") 2:13–14).

## II. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the Court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

The Court will first address RSIC Defendants' Motion and then address Wood Rodgers Defendants' Motion.

### A. RSIC Defendants' Motion to Dismiss

RSIC Defendants seek dismissal of all of Plaintiffs' claims because of sovereign immunity. Specifically, RSIC Defendants state that both "RSIC and the RSIC Officers are protected by the doctrine of sovereign immunity" because RSIC is a "federally-recognized Indian tribe" and the RSIC Officers "have been sued in their official capacities as high-ranking members of RSIC." (RSIC MTD 2:13–19).

"Sovereign immunity limits a federal court's subject matter jurisdiction over actions brought against a sovereign. Similarly, tribal immunity precludes subject matter jurisdiction in an action against an Indian tribe." *Alvarado v. Table Mt. Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007). "Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1398 (9th Cir. 1993). "There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001). Waiver of

sovereign immunity by a tribe may not be implied and must be expressed unequivocally. *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996). Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation." *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004).

Tribal sovereign immunity is not dependent on a distinction between on-reservation and off-reservation conduct nor is it dependent upon a distinction between the governmental and commercial activities. *Kiowa Tribe v. Manufacturing Techs.*, 523 U.S. 751, 754–55 (1998). A tribe's sovereign immunity extends both to tribal governing bodies and to tribal agencies that act as an arm of the tribe. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006). The Court will first address sovereign immunity as to RSIC and then to RSIC Officers.

### 1. RSIC

Plaintiffs allege that RSIC "expressly waived sovereign immunity and consented to Plaintiffs' suit against itself, its subdivisions, its officers, agents, employees, and members, in both their individual and official capacities." (Am. Compl. ¶ 200). Plaintiffs continue "[b]y accepting federal monies validly conditioned on a waiver of tribal sovereign immunity, RSIC subjected itself to private litigation." (*Id.* ¶ 201).

RSIC asserts that "Plaintiffs fail to point to any language that supports the position that the tribe's receipt of federal monies was conditioned upon a waiver of sovereign immunity." (RSIC MTD 8:12–13). Indeed, "[a]bsent express waiver, consent by the Tribe to suit, or congressional authorization for such a suit, a federal court is without jurisdiction to entertain claims advanced against the Tribe." *Evans v. McKay*, 869 F.2d 1341, 1345-46 (9th Cir. 1989). Plaintiffs allege that "Congress has a significant interest in ensuring the benefits RSIC secured through federal monies." (Am. Compl. ¶ 197). Significant interest or not, however, Plaintiffs do not identify the specific congressional authorization necessary for Plaintiffs to bring this suit.

Plaintiffs further assert that Defendants are not entitled to sovereign immunity because RSIC inserted a written "Limited Waiver of Sovereign Immunity" clause "in a federally funded contract that Plaintiffs submitted the low bid for but were later disqualified due to RSIC's discrimination." (Resp. 1:21–24). However, this allegation is unavailing. As Plaintiffs themselves allege, Plaintiffs "asked [RSIC Defendants] for a *sample* waiver of tribal sovereign immunity form." (Am. Compl. ¶ 71) (emphasis added). This "sample" was just that—an example provision in an unsigned contract that is not binding on any party at issue here. Because of this, RSIC did not contractually waive its sovereign immunity with Plaintiffs, and Defendants have established their entitlement to sovereign immunity. The Court fails to see how Plaintiffs can amend their allegations to fix their deficiencies in order to provide this Court with jurisdiction over RSIC; there is no express waiver, RSIC did not consent to the suit, and there is no express congressional authorization for Plaintiffs to sue. Accordingly, RSIC has sovereign immunity and the Court does not have jurisdiction over it.

### 2. RSIC Officers

Tribal sovereign immunity further extends to tribal officials when acting in their official capacity and within the scope of their authority but not to individual tribe members generally. *United States v. Oregon*, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981); *see Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002). "[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Dugan v. Rank*, 372 U.S. 609, 611, 620–622 (1963)).

Here, Plaintiffs fail to identify what actions RSIC Officers committed in their individual capacity to render them liable, as Plaintiffs' Amended Complaint focuses mainly on the alleged

wrongs the RSIC Officers committed solely while acting in their official capacity. (*See* Am. Compl. ¶¶ 10–15). Moreover, Plaintiffs allege specifically in the Amended Complaint that the RSIC Officers are being sued as tribal employees. (*Id.* ¶¶ 10–13). Although Plaintiffs basely allege that "Plaintiffs sue all RSIC Defendants (except RSIC) in their individual and official capacities," Plaintiffs only allege causes of action against RSIC Officers for conduct that occurred while RSIC Officers were acting in their official capacity and within the scope of their authority. (*Id.* ¶ 17); *see United States v. Oregon*, 657 F.2d at 1013 n.8. Pursuant to Plaintiffs' pleadings, RSIC is the real party in interest and the relief sought from RSIC Officers is nominal. (*See* Am. Compl. 92:3–93:15). Because of this, RSIC Officers are entitled to sovereign immunity. Accordingly, the Court grants RSIC Defendants' Motion to Dismiss for both RSIC and RSIC Officers for lack of subject matter jurisdiction pursuant to tribal sovereign immunity.

### B. Wood Rodgers Defendants' Motion to Dismiss

Wood Rodgers Defendants assert that they never acted under color of state law with regard to the alleged conduct in this case, and because there is no state action, "the § 1983 claims must be dismissed." (Wood Rodgers MTD 2:13–16). Specifically, Wood Rodgers is a private civil engineering firm, of which Cendagorta is an employee. (Am. Compl. ¶ 19). Wood Rodgers Defendants assert that neither "agreed to become nor were they required to become government or state actors." (Wood Rodgers MTD 3:15–16). Plaintiffs concede that Wood Rodgers Defendants are "a private corporation and a design professional," but assert that they are able to be sued under § 1983 because they "accepted federal funds . . . for procurement of a federal public works construction contract governed by federal regulations." (Resp. 1:22–25). Additionally, Plaintiffs allege that Wood Rodgers Defendants "exercised control over the public sector" in "performing acts traditionally performed by a State of Nevada public works agency, such as disqualifying a bidder and rejecting a bid." (*Id.* 1:26–2:1).

Wood Rodgers Defendants argue that they are not state actors under any of the four tests recognized by the Ninth Circuit. (Reply 3:16–18). These tests are: (1) public function; (2) joint action; (3) state compulsion; and (4) governmental nexus. The Court will address each test in turn.

### 1. Public Function

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003). A party satisfies the public function test only by showing that the function at issue is "both traditionally and exclusively governmental." *Id.*

Here, Plaintiffs assert that the Court should instead use a balancing test in determining state action and consider Plaintiffs' equal protection and free speech claims as significant factors. (Resp. 4:14–17). Absent from this argument, however, is how Wood Rodgers Defendants performed a function that is "traditionally and exclusively governmental." *See Kirtley*, 326 F.3d at 1093. Moreover, Plaintiffs' attenuated allegation that Wood Rodgers Defendants are state actors because Wood Rodgers Defendants were told that their policies and procedures for bidding assistance should reflect State of Nevada policies and law is unavailing. An instruction to reflect and follow state law does not constitute state action. Moreover, Defendants inviting bids from only qualified Nevada-licensed contractors does not amount to state action. Plaintiffs therefore fail to satisfy the public function test.

### 2. Joint Action

Under the joint action test, the Ninth Circuit considers whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state

knowingly accepts the benefits derived from unconstitutional behavior." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).

The only argument Plaintiffs assert under joint action is a case comparison where the Ninth Circuit found "that [the] casino's acts were state action under [the] joint action test because of [the] system of cooperation and interdependence with Las Vegas police department." (Resp. 6:19–20); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012). However, that is not the case here. In *Tsao*, the defendants' security guards had police authority normally reserved to the state and received this authority by being trained by state police. *Tsao*, 698 F.3d at 1140. None of these facts, or even facts remotely comparable to this, are present in this case. Moreover, Wood Rodgers contracted with an independent Indian tribe that operates pursuant to federal law and is therefore not a governmental entity. As such, Plaintiffs fail to satisfy the joint action test.

### 3. State Compulsion

The compulsion test considers whether the coercive influence or significant encouragement of the state effectively converts a private action into a government action. *Kirtley*, 326 F.3d at 1094. Here, Plaintiffs not only fail to present an argument addressing this test, but also are unable to assert facts under the compulsion test because there is no governmental entity that is exercising a coercive influence or significant encouragement. Although Plaintiffs may allege that Wood Rodgers Defendants or RSIC Defendants exercised these things, neither are the state or any sort of governmental entity. Therefore, the state compulsion test does not apply.

### 4. Governmental Nexus

The nexus test asks whether there is such a "close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State

itself." *Kirtley*, 326 F.3d at 1095. Plaintiffs only passingly acknowledge this test[1] and fail to present an argument as to why it applies. Moreover, Plaintiffs are unable to allege a nexus because there is no governmental entity with which a nexus could exist. As such, the governmental nexus test does not apply.

Accordingly, Plaintiffs have failed to sufficiently show that Wood Rodgers Defendants were state actors. Because § 1983 requires a plaintiff to prove that its deprivation was committed by a person acting under the color of state law, Plaintiffs' § 1983 claims[2] against Wood Rodgers Defendants are dismissed.[3]

### C. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

---

[1] Notably, Plaintiffs only allege that "[a]ll of those acts constitute traditional state public works procurement functions and there is a close nexus between the conduct of RSIC and those traditional state functions." Plaintiffs only assert the nexus argument as between the State of Nevada and RSIC, which RSIC, as discussed *supra*, is foreclosed due to sovereign immunity. Plaintiffs fail to anywhere allege how Wood Rodgers Defendants exercised a nexus to a governmental entity.

[2] Specifically, Plaintiffs' first through twelfth causes of action are premised on § 1983.

[3] Because the federal claims have been dismissed against Wood Rodgers Defendants, the Court only has supplemental jurisdiction over the remaining state law claims. *Lacey v. Maricopa County*, 649 F.3d 1118, 1137 (9th Cir. 2011). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and Plaintiffs' thirteenth through sixteenth causes of action against Wood Rodgers Defendants are dismissed for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, state claims should be dismissed as well).

Because the Court does not have jurisdiction over RSIC Defendants, the Court cannot provide Plaintiffs leave to amend their Complaint as to the RSIC Defendants. As to the dismissal of the claims against Wood Rodgers Defendants, the Court finds that none of the claims could possibly be cured by the allegations of other facts. Specifically, the Court finds that leave to amend the claims against Wood Rodgers Defendants would be futile because there are no facts available to be pled in order to allege Wood Rodgers Defendants as state actors. Accordingly, the claims asserted against Wood Rodgers Defendants are dismissed with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that RSIC Defendants' Motion to Dismiss, (ECF No. 17), is **GRANTED**. The Court does not have subject matter jurisdiction over RSIC Defendants and therefore all claims against RSIC Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that Wood Rodgers Defendants' Motion to Dismiss, (ECF No. 19), is **GRANTED**, and because Wood Rodgers Defendants are not state actors, Plaintiffs' claims against Wood Rodgers Defendants are **DISMISSED with prejudice**.

The Clerk of the Court shall close the case.

**DATED** this __30__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge